IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTIE PUNGER<br>    *Plaintiff*, | §<br>§<br>§<br>§<br>§ | |
| | | C.A. NO. _____ |
| v. | §<br>§<br>§ | |
| | | JURY TRIAL DEMANDED |
| FARRAH MARTINEZ, PLLC<br>    *Defendant*. | §<br>§<br>§<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Christie Punger ("Plaintiff" or "Punger") brings this suit against her former employer, Farrah Martinez, PLLC ("Martinez, PLLC" or "Defendant") under 29 U.S.C § 216(b). In support thereof, Plaintiff asserts the following:

### I.    NATURE OF THE CASE

1.    The Fair Labor Standards Act ("FLSA") defines appropriate pay deductions and sets overtime pay, minimum wage, and recordkeeping requirements for covered employers. 29 U.S.C. §§ 206(a), 207(a), 211(c). Plaintiff's claims arise under the FLSA for 1) unpaid regular and overtime wages; 2) misclassification; and 3) failure to maintain adequate records.

2.    Martinez, PLLC willfully violated the FLSA because the company knew or showed a reckless disregard for whether its pay practices were unlawful. Therefore, Plaintiff brings

this action, under 29 U.S.C. § 216(b) to recover back wages, liquidated damages, and attorneys' fees and costs.

## II.    PARTIES

3.    Plaintiff Christie Punger is an individual, who is a citizen of the State of Texas and currently resides within the jurisdiction of the Southern District of Texas, Houston Division.

4.    Defendant Farrah Martinez, PLLC is a domestic professional limited liability company, a law firm, that may be served through the company's registered agent, Farrah Gathright Martinez at 700 Louisiana Street, Suite 3950 Houston, Texas 77002. Alternatively, if the registered agent of this Defendant cannot with reasonable diligence be found at the company's registered office, Defendant may be served with process by serving the Texas Secretary of State. *See*, TEX. BUS. ORG. CODE §§ 5.251-5.254; *see also*, TEX. CIV. PRAC. & REM. CODE § 17.026.

5.    An allegation that Defendant committed any act or omission should be construed to mean the company's officers, directors, vice-principals, agents, servants, or employees committed such an act or omission and that, at the time such act or omission was committed, it was done with the full authorization, ratification, or approval of Defendant or was done in the normal course and scope of employment of Defendant's officers, directors, vice-principals, agents, servants, or employee.

## III.    JURISDICTION AND VENUE

6.    This action arises under a federal statute, the FLSA. 28 U.S.C. § 1331 (federal-question jurisdiction).

7.      Venue is proper in this judicial district court 28 U.S.C. §1391(b), (c) and 42 U.S.C. §2000e- 5(f)(3), because Defendant conducts business in the district, and a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in the Southern District of Texas, Houston Division.

## IV.    STATEMENT OF FACTS

8.      Punger initially began working for Defendant Farrah Martinez, PLLC ("Defendant or "the firm") in approximately April 2018 as a paralegal for Defendant drafting legal documents, managing client communication, training new staff, and overseeing day-to-day operations for Defendant.

9.      Defendant employed Punger from approximately April 2018 to January 2024. Defendant originally hired Plaintiff as litigation paralegal, but in April 2022, Defendant expanded Plaintiff's responsibilities to encompass both pre-litigation and litigation matters. Fulfilling the duties of a paralegal for a law firm with as many cases as Defendant was a full-time job.

10.      Initially, from April 2018 through 2020, Plaintiff's responsibilities as a litigation paralegal included drafting petitions, responding to discovery, drafting motions, propounding discovery, reviewing discovery, drafting discovery concern letters, and handling any additional tasks as assigned.

11.      From 2020 to 2022, Plaintiff's responsibilities grew to include reviewing medical records, creating mediation slides, and working on affidavits for medical and billing records. Since her responsibilities grew, Plaintiff worked more hours during this period.

12.      Finally, from April 2022 onwards, after the termination of the legal assistant Julie

McLoughlin, Plaintiff was required to now take on prelitigation matters. In addition to her initial duties, Plaintiff was responsible for responding to insurance adjusters' calls, handling client and potential new client calls, managing e-filing and other clerical tasks, obtaining medical and billing records, and training new employees. Plaintiff's expanded role included working on various types of cases, drafting legal documents, communicating with medical providers, managing the firm's calendar, coordinating with the process server, setting up new clients with medical providers, attending CLE training, and preparing trial documents. She oversaw pre-litigation and litigation dockets, followed firm protocols, and completed tasks as directed, often within tight timeframes. Due to these increased responsibilities, Plaintiff worked more hours during this period.

13.    As the Plaintiff's responsibilities expanded over time, necessitating additional hours, it becomes apparent that Defendant's failure to maintain accurate records of work hours and payments exacerbated the situation.

14.    On multiple occasions, Plaintiff encountered issues where her billed hours were not fully compensated due to factors beyond her control. Specifically, on one occasion, Plaintiff drafted a response to a motion to compel and submitted it on time. However, Farrah Martinez, Defendant's director and Plaintiff's supervisor, refused to pay Plaintiff for the full amount of time billed, claiming that Martinez's busy schedule prevented the document from being reviewed, rendering it unusable by Defendant. This situation occurred approximately two to three times.

15.    During a trial matter in June 2023, severe storms caused a power outage in Plaintiff's area for 2.5 days, with temperatures reaching 110 degrees. Despite informing Martinez and

a legal assistant via text about the inability to complete a task due to the power outage, Plaintiff was still expected to work on the assignments. Martinez did not permit the plaintiff to bill for the time spent starting the assignment before the power outage.

16.    Also, without Wi-Fi for over a week, Plaintiff was tasked with finding video editors for depositions, working on redactions, and marking specific redactions required by opposing counsel. Despite Punger working off a phone hotspot at all hours, Martinez insisted that Plaintiff revise the hours she submitted, claiming that Plaintiff provided insufficient support for the hours during the trial. As a result, Plaintiff was not paid for 17 hours of work that she completed for Defendant.

17.    In June 2023, Plaintiff worked a total of 61.5 hours during a pay period but received compensation for only 61.0 hours of work. Upon raising the issue with Martinez, Martinez amazingly instructed Plaintiff to reduce her reported hours to 44 for that pay period and only paid her for 44 hours instead of the entire 61.5.

18.    In July 2023, an overpayment error by the payroll company, Paychex, resulted in a notification that Plaintiff's check would be recalled. Despite the recall never transpiring, upon returning from vacation, Plaintiff was informed by Martinez that she had to work off the excess hours until the overpayment was reconciled.  This mandate resulted in Plaintiff working approximately 61.5 unpaid hours to offset a recall that never occurred.

19.    In September 2023, Plaintiff logged 44.4 hours for a pay period, but was only paid Plaintiff for 43.6 hours of work.

20.    Plaintiff was not compensated at all for any overtime hours (over 40) that she worked during her entire employment with Defendant. Instead, for the hours she was paid,

she was paid straight-time-for-overtime.

21.     In addition to failing to compensate Plaintiff for all her hours worked, including overtime at the appropriate rate, and the imposition of non-paid hours she was forced to work, Defendant also misclassified Plaintiff as an independent contractor.

22.     However, though Defendant misclassified Plaintiff as an independent contractor, Defendant acted as Punger's employer. Specifically, Plaintiff did not determine her own rate of pay, but her rate of pay was unilaterally set by Martinez. Moreover, Plaintiff received specific instructions for daily assignments and weekly work schedules from Martinez. Punger did not have any independence, autonomy, or decision-making authority when it came to her job assignments, her rate of pay, or her schedule.

23.     Also, during the period from April 2018 to January 2024, Plaintiff exclusively worked for Defendant. Defendant provided Plaintiff with various resources such as a firm laptop, firm email, firm credit card, Microsoft 365 subscription, Lexis Nexis login, Practice Panther login, and Vonage equipment, which Plaintiff was required to use throughout the course of her employment.

24.     Notably, Plaintiff was required to always be available for Martinez and work beyond her designated hours for the week. Plaintiff had neither the opportunity or the time to work for any other employers. In other words, Plaintiff was not a contractor in business for herself, as she was classified by Defendant.

25.     During Plaintiff's employment with Defendant, she was engaged in commerce or the production of goods for commerce. During her work, Plaintiff regularly engaged in activities that involve interstate communication and transactions, such as dealing with out-

of-state clients, opposing counsel, and courts. Additionally, Plaintiff regularly used tools such as phone calls, emails, and other electronic communication method to perform her duties. Moreover, Plaintiff regularly used legal research databases, document management systems, and case management software that operates on a national or global scale.

26.    During Punger's employment with Defendant, she directly and regularly engaged in interstate commerce, and this engagement was a substantial part of her work. Thus, Plaintiff is eligible for individual coverage under the FLSA.

27.    Moreover, because Defendant is an enterprise whose daily duties as a firm include interstate transactions and communications, Plaintiff is also eligible for enterprise coverage under the FLSA.

28.    Defendant failed to pay Plaintiff the correct wages the entire time she was employed. As such, Plaintiff's hourly rate for the hours she worked during this time period was well below the federal minimum wage.

29.    Throughout her employment, Plaintiff was required to send Martinez a bi-weekly timesheet via email that consisted of all the hours she worked and the assignments she completed. Martinez would regularly manipulate Punger's logged weekly hours (making it less than what it was), manipulate the assignments, and delay payments, causing her to be paid less than her agreed hourly rate. Moreover, when Plaintiff would turn in her hours, Martinez would routinely "dispute" the hours Plaintiff submitted and would pay her whatever hours she thought were valid, not the full number of hours Plaintiff actually worked.

30.    In June 2022, Plaintiff did not receive payment for a full pay period consisting of

80 hours of work. As a result, Martinez compensated Plaintiff for the 80 hours worked during the unpaid period, along with the 56 hours worked from the subsequent pay period, in one combined payment.

31.    Additionally, in April 2023 there was an instance where Plaintiff was overpaid via PayPal by $382.50. Martinez notified Plaintiff via email that she was mistakenly overpaid and subsequently deducted this amount from Plaintiff's following paycheck. Plaintiff would have gladly returned the funds but was not given that choice. While the Plaintiff did comply with the deduction, she did not provide express, written permission for her boss to deduct any pay.

32.    In January 2024, Martinez terminated Plaintiff's employment.

33.    Throughout Plaintiff's entire employment with Defendant, the requirements for accounting and billing time were repeatedly changed, complicating accurate tracking of hours for Plaintiff. Despite working full-time and handling significant responsibilities, many of Plaintiff's tasks and hours were contested, adjusted, or unpaid by Martinez. Inconsistencies in payment occurred if time was not submitted promptly (according to Martinez) and it often took Plaintiff over four hours to document all the time Martinez would bill her clients for, which Plaintiff was not paid for.

34.    Defendant willfully violated the FLSA because it knew or showed a reckless disregard for whether its pay practices were unlawful. Specifically, pay issues were frequently brought up to Martinez by Plaintiff and most were either unresolved, or the reporting would make the issue worse than before. Because Defendant willfully violated the FLSA, the company is liable to Plaintiff for any FLSA violations that occurred from

April 2018 to January 2024. 29 U.S.C. § 255(a).

35.    As a result of the FLSA violation(s) described above, Defendant is liable to Plaintiff for back wages, liquidated damages, and attorneys' fees and costs. 29 U.S.C. §216(b).

## V.    CAUSES OF ACTION

### A.  Count One: Misclassification under FLSA

36.    Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

37.    Defendant misclassified Plaintiff as an independent contractor. 29 CFR § 795.105(b). Because Plaintiff should have been classified as an employee, Plaintiff is entitled to protection under the FLSA.

38.    During Plaintiff's employment with Defendant, she should have been classified as an hourly, non-exempt employee and entitled to be paid at least the federal minimum wage, $7.25 per hour, for all hours worked. 29 U.S.C. § 206(a)(1) as well as overtime.

39.    Plaintiff was not in business for herself, as she had no control over her work or schedule, which clearly distinguishes her role as an employee rather than an independent contractor.

40.    As such, Plaintiff was misclassified as an independent contractor.

### B.  Count Two – Failure to Pay Minimum Wage in Violation of 29 U.S.C § 206

41.    Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

42.    Defendant paid Plaintiff at a rate that was (and is) below $7.25 per hour. In fact, Plaintiff was paid at an hourly rate of $0.00 per hour for over a month of work (July 2,

2023, to August 12, 2023), totaling 61.5 hours for which Plaintiff was not paid.

43.    As such, Defendant violated the FLSA by paying Plaintiff below minimum wage for these hours.

## C.  Count Three – Failure to Pay Overtime Wage in Violation of 29 U.S.C § 207

44.    Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

45.    During Punger's employment with Defendant, she was a non-exempt employee. Because Plaintiff was a non-exempt employee, Defendant was legally obligated to pay Plaintiff "at a rate not less than one and one-half times the regular rate" at which she was employed for the hours she worked in excess of forty per week. 29 U.S.C. § 207(a)(1).

46.    However, Defendant did not pay Punger "at a rate not less than one and one-half times the regular rate" at which she was employed as required by 29 U.S.C. § 207(a)(1). Instead, Defendant paid Punger at her normal hourly rate for all the hours she worked.

47.    In other words, Defendant paid Plaintiff for their overtime at a rate less than one and one-half times the regular rate at which she was employed in violation of the FLSA.

48.    As a result of the FLSA violation(s) described above, Defendant is liable to Punger for back wages equal to the difference between what the firm should have paid and what it actually paid.

## D.  Count Four – Retaliation Violation Under 29 U.S.C. § 215(a)

49.    Plaintiff repeats and re-alleges all facts alleged above with the same force and

effect as though fully set forth herein.

50.     Upon Plaintiff's complaint to her supervisor, Martinez, regarding the discrepancy in her pay, where she was wrongfully compensated for 61 hours of work instead of the 61.5 hours she had worked, Martinez further instructed Plaintiff to reduce her reported hours, resulting in payment for only 44 hours of work for that pay period.

51.     Martinez's actions amount to retaliatory actions Plaintiff, as Plaintiff faced repercussions after asserting her rights.

52.     Thus, Defendant violated 29 U.S.C. § 215(a)'s requirement to not retaliate against an employee for lodging a complaint.

### E.   **Count Five – Recordkeeping Violation in Violation of 29 U.S.C. § 211**

53.     Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

54.     Defendant failed to keep accurate time and pay records for Plaintiff throughout her employment with Defendant.

55.     Defendant's failure is evident in their failing to account for – and pay for – all hours worked by Punger in a timely manner.

56.     As such, Defendant violated 29 U.S.C. § 211's requirement to keep accurate time and pay records for Plaintiff.

### F.   **Count Six – Willful Violation of the FLSA under 29 U.S.C § 255(a)**

57.     Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

58.     Defendant willfully violated the FLSA because it knew or showed a reckless

disregard for whether its pay practices were unlawful.

59.     Plaintiff has contacted Defendant about the unlawful pay practices and expressly complained about the discrepancies in her hours and pay she was missing for the total hours that she worked but the issue was not corrected.

60.     Additionally, Defendant continued the pay practice(s) complained of by Punger without investigation after being put on notice that the pay practice(s) violated the FLSA when Plaintiff expressly complained about her pay.

61.     Therefore, because Defendant willfully violated the FLSA, the company is liable to Punger for any FLSA violations that occurred during the last three years. 29 U.S.C. § 255(a).

### G.  Count Seven – Liquidated Damages, Attorneys' Fees & Costs under 29 U.S.C. § 216(b)

62.     Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein. FED. R. CIV. P. 10(c).

63.     Plaintiff is authorized to recover liquidated damages on her claims by statute. 29 U.S.C. § 216(b).

64.     Plaintiff is authorized to recover attorneys' fees and costs on her claims by statute as well. 29 U.S.C. § 216(b).

65.     Plaintiff has retained the professional services of the undersigned attorney. Thus, Plaintiff has complied with the conditions precedent to recovering attorneys' fees and costs.

66.     Moreover, Plaintiff has incurred and will incur attorneys' fees and costs in bringing

this lawsuit. The attorneys' fees and costs incurred (or that will be incurred) were or are reasonable and necessary.

67.    Defendant is liable to Plaintiff for liquidated damages, attorneys' fees and costs by reason of the FLSA violations described herein. 29 U.S.C. § 216(b).

## VI.    JURY REQUEST

68.    Plaintiff requests a trial by jury.

## VII.    PRAYER

For these reasons, Plaintiff prays that Defendant be cited to appear and answer herein and that this case be advanced for trial before a jury, and that on final hearing this Court grant the following relief:

a)    an Order under 29 U.S.C. § 216(b) authorizing notice regarding the pendency of this case;

b)    For actual damages;

c)    For economic damages;

d)    Judgment against Defendant in Plaintiff's favor for back wages, liquidated damages and attorneys' fees, plus interest and costs;

e)    related benefits resulting from the unfair practices of Defendant;

f)    For exemplary and/or punitive damages in the amount found by the trier of fact to punish and deter continuation of Defendant's unlawful employment practices;

g)    Pre-judgment interest at the highest rate allowed by law;

h)    Post-judgment interest at the highest rate allowed by law; and

i)       For all other relief and sums to which this Court deems Plaintiff is justly

entitled and/or deems proper.


Respectfully Submitted,

**SPACE CITY LAW FIRM**

Bridget Davidson
*bdavidson@spacecitylaw.com*
TBN: 24096858
SPACE CITY LAW FIRM
440 Louisiana Street, Suite 1110
Houston, Texas 77002
Tel.: 713-568-5305
Fax: 713-583-1107

ATTORNEY FOR PLAINTIFF