IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTIE PUNGER<br>*Plaintiff*,<br><br>v.<br><br>FARRAH MARTINEZ, PLLC<br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. NO. 4:24-CV-02217<br><br>JURY TRIAL DEMANDED |

**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW Plaintiff Christie Punger and moves for summary judgment on her claims against Defendant Farrah Martinez, PLLC ("Defendant" or "the Firm"). In support thereof, Plaintiff respectfully shows the following:

## Table of Contents

**Table of Authorities** .......... **2**
**I. INTRODUCTION** .......... **4**
**II. PROCEDURAL HISTORY** .......... **4**
**III. UNDISPUTED FACTS** .......... **4**
**IV. AUTHORITIES AND ARGUMENTS** .......... **9**
**V. DEFENDANTS' AFFIRMATIVE DEFENSES** .......... **15**
**VI. CONCLUSION** .......... **18**

## Table of Authorities

**Cases**

*Brennan v. Heard*,
491 F.2d 1, (5th Cir. 1974) .......... 14
*Chicca v. St. Luke's Episcopal Health Sys.*,
858 F. Supp. 2d 777 (S.D.Tex. 2012) .......... 14
*Diaz v. Castro*,
122 F. Supp. 3d 603 (S. D. Tex. 2014) .......... 12
*Diggs v. Harris Hosp. – Methodist, Inc.*,
847 F.2d 270 (5th Cir. 1988) .......... 10
*Garner v. Chevron Phillips Chem. Co., L.P.*,
834 F. Supp. 2d 528, (S.D.Tex. 2011) .......... 12, 13
*Hopkins v. Cornerstone Am.*,
545 F.3d 338 (5th Cir. 2008). .......... 11
*Johnson v. Hous. KP, LLC*,
588 F. Supp. 3d 738 (S.D. Tex. 2022) .......... 10, 11
*Juino v. Livingston Par. Fire Dist. No. 5*,
717 F.3d 431 (5th Cir. 2013) .......... 10
*Klick v. Cenikor Found.*,
94 F.4th 362 (5th Cir. 2023) .......... 10
*Mares v. March*,
777 F.2d 1066 (5th Cir. 1985) .......... 10
*Mata v. Caring for You Home Health, Inc.*,
94 F. Supp. 3d 867 (S.D. Tex. 2015) .......... 9
*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (S.Ct. 1992) .......... 10
*Nieddu v. Lifetime Fitness, Inc.*,
38 F. Supp. 3d 849 (S.D. Tex. 2014) .......... 14
*Reeves v. International Tel. & Tel. Corp.*,
616 F.2d 1342 (5th Cir. 1980) .......... 15
*Seong Song v. JFE Franchising, Inc.*,
394 F. Supp. 3d 748, (S.D.Tex. 2019) .......... 14

**Statutes**

29 U.S.C §203 .......... 10
29 U.S.C 211 .......... 14
29 U.S.C 216 .......... 15
29 U.S.C 255 .......... 14
Fed. R. Civ. 56 .......... 9

**Rules**

29 CFR §778.316 .......... 12
29 CFR §795.105 .......... 10
29 U.S.C §216 .......... 11
29 U.S.C 207 .......... 12

## I. INTRODUCTION

Defendant is a law firm that has utilized several support staff members over the years, including Plaintiff. During the last two to three years of her employment, Plaintiff regularly worked over 40 hours per week, and her duties were that of an employee, but was misclassified as an independent contractor. As such, the Plaintiff is entitled to overtime during the last three years of her employment and moves for summary judgment on her claims.

## II. PROCEDURAL HISTORY

Plaintiff filed suit on June 11, 2024. Defendant filed its Answer on August 9, 2024. All discovery has been completed as of the date of this Motion, the deadline for which is July 31, 2025.

## III. UNDISPUTED FACTS

### A. Plaintiff's Work before April 2022

The Defendant is a Houston-based law firm with one principal lawyer, Farrah Martinez ("Martinez"), that has had several staff members providing secretarial and legal support over the last several years.[1] One of these support staff members is Plaintiff Christie Punger ("Plaintiff"), who began working for Defendant in approximately April 2018 as a part-time paralegal for litigation matters.[2] From April 2022 until August 2023, Martinez went through four support staff members, while Plaintiff remained with the Firm on a part-time basis.[3] Operating on her general understanding, without any employment law experience or education, and reviewing no documents or consulting experts in the matter, Martinez classified all four support staff as employees of the Firm.[4] Contrarily, Martinez classified Plaintiff as an independent contractor.[5] Plaintiff had never been employed as an independent contractor before her work for the Defendant.[6] Defendant

[1] Exhibit A - Defendant's Combined Discovery Responses – Response to Interrogatory No. 1.
[2] Exhibit B - May 13, 2025, Deposition of Christie Punger, p.54.
[3] *Id. at* p.147-154.
[4] Exhibit C – May 12, 2025, Deposition of Farrah Martinez, p.37-38.
[5] *Id. at* p.43.
[6] Ex. B, p. 90.

required Plaintiff to pass a background check to begin working for the Firm.[7] Working at the Firm alongside Martinez and Ms. Punger was one full-time employee, the legal assistant, McLaughlin.[8] Immediately after McLaughlin, Martinez hired and (shortly thereafter) fired Vicki Olwar.[9] Followed by Brittany Davis ("Davis").[10] Then, Jami Watkins ("Watkins"), who worked fully remote and, like Plaintiff.[11] Then, Watkins was terminated, and Chasity Ferguson ("Ferguson") was hired and was the legal assistant for the Firm until February 2024.[12]

Martinez assigned Plaintiff's daily tasks and work and closely monitored and supervised her progress.[13] During this period of her employment, Plaintiff's responsibilities included: drafting motions, drafting pleadings, drafting 1801 affidavits, reviewing and organizing and labeling medical and billing records, drafting discovery requests and responses, communicating with clients, and other miscellaneous paralegal-type tasks assigned by Martinez.[14]

Martinez required she approve Plaintiff's work before it was sent or filed on behalf of the Firm.[15] Martinez also checked in with Plaintiff multiple times a day regarding her work for the Firm via email, text, Microsoft Teams, or Zoom.[16] Plaintiff's title was Paralegal for Defendant, with a Firm email that only Plaintiff and the Firm administrator had access.[17] Plaintiff believed she was an employee of the Firm until April 2019, after Martinez required her to provide her own software to complete Bates stamping and other Firm tasks.[18] When Plaintiff applied for the PPP loan in approximately 2021, she did not understand the difference between an employee and an

---

[7] Ex. B, p. 92.
[8] *Id.* at p.141.
[9] *Id.* at p.150.
[10] *Id.* at p.151.
[11] *Id.*
[12] Exhibit D - May 8, 2025, Deposition of Chasity Ferguson, p.10.
[13] Ex. C, p.33.
[14] Ex. B, pp.54-55.
[15] Ex. C, p.70.
[16] Ex. B, pp.125-26.
[17] *Id.* at p.87, 97.
[18] *Id.* at pp.91-93, 147.

independent contractor.[19] Using information gleaned from a social media advertisement, Plaintiff applied and was approved for a PPP loan from Capital Plus Financial, LLC in April 2021.[20] Plaintiff marked that she received a 1099 from her employer, which she did, still having no real understanding of the difference between a contractor and an employee and how she should have been classified.[21]

**B. Changes to Plaintiff's Job - April 2022 – January 2024**

When Julie McLaughlin ("McLaughlin") separated from the Firm in April 2022, Plaintiff's work circumstances drastically changed.[22] Martinez placed the day-to-day tasks McLaughlin managed on Plaintiff.[23] Plaintiff's Beginning in April 2022, Defendant went through four legal assistant replacements for McLaughlin, requiring Plaintiff to manage the training for each new hire until her eventual termination in January 2024.[24] Watkins worked fully remote and was issued a Firm laptop and equipment.[25] Plaintiff trained Watkins and graded her performance for Martinez.[26] Then, Watkins was terminated and Chasity Ferguson ("Ferguson") was hired and was the legal assistant for the Firm until February 2024.[27] At this point, Plaintiff's duties mirrored those of these legal assistants.[28] Notably, during this time period, each time the legal assistants left or were fired, their responsibilities would fall back on Plaintiff.[29] This cycle repeated thrice before Plaintiff was ultimately terminated from the Firm.[30] All legal assistants were classified as employees.[31]

---

[19] Ex. B, p.147.
[20] *Id.* at p.146.
[21] *Id.* at p.147.
[22] *Id.*
[23] *Id.*
[24] *Id.* at p.149-154.
[25] *Id.*
[26] *Id.* at p.149-51, Exhibit E - June 23, 2025, Deposition Upon Written Questions of Jami Watkins, Q. 26.
[27] Ex. D, p.10.
[28] *Id.* at p.16.
[29] Ex. B, pp.149-51.
[30] *Id.* at pp.152-54.
[31] Ex. C, p. 73.

Plaintiff did not work over 40 hours in any given workweek before 2022.[32] After 2022, Plaintiff's new responsibilities, in addition to the duties during her employment from 2018 – 2022, included: client intake, pre-litigation matters, drafting demands, drafting medical record summaries, drafting deposition summaries, communicating with adjusters, communicating with medical providers, managing the fax communications for the Firm, requesting medical records and billing records.[33]

In September 2022, Martinez offered to reclassify Plaintiff as an employee.[34] And, even though Plaintiff asked Martinez for clarification on the differences between an independent contractor and employee regarding the offer to reclassify Plaintiff, Martinez never explained the difference or the ultimate effects on Plaintiff; further conversation discussing this transition never occurred.[35]

In October 2022, Plaintiff was issued a laptop by Martinez, granted access to all of the Firm's Google account passwords, as well as login credentials for third-party medical record retrieval companies.[36] During Plaintiff's employment, Martinez required Plaintiff to attend CLE courses as a condition of her employment.[37] Plaintiff was required to attend weekly staff meetings via Zoom alongside Firm staff, as if she were just another employee.[38]

**C. Defendant's Policy of Not Paying Overtime, even if worked**

Martinez first began this Firm in 2005, and the present purpose of all employees of the Firm is to provide legal representation for those involved in personal injury conflicts.[39] Martinez

---

[32] Ex. B, p.123; *see,* Exhibit F.
[33] Ex. B, p.148; *see, supra* Part III.A; *see,* Exhibit G.
[34] Ex. B, p.127.
[35] *Id.* at pp.90, 127.
[36] *Id.* at pp.78, 148.
[37] *Id.* at p. 92.
[38] Ex. C, pp.6-8.
[39] *Id.* at pp.5-8.

forced employees to seek approval before working over 40 hours per week.[40] Ferguson testified that she was only paid overtime *once* while employed with the Firm.[41] McLoughlin testified to working enough hours to qualify for overtime and instead of being paid her overtime, Martinez would instruct her to simply come in later the next day.[42] On at least five different occasions, Plaintiff submitted timesheets reflecting more than 40 hours worked in a week, and each time, Martinez would schedule a phone conversation to discuss the submitted timesheet.[43] Defendant did not allow employees to collect overtime. [44] Anytime Plaintiff worked over 40 hours, Martinez would contest the her timesheet.[45] There were times Martinez would ask the Firm staff to come in late the day after working overtime to offset payment.[46]

Employees of the Firm are made to individually track and submit their hours to Martinez for remittance of their wages.[47] Defendant required the use of a Firm-specific timesheet in 2023; before that, Plaintiff prepared and submitted an itemized billing timesheet.[48] Defendant regularly rejected, revised, and contested Plaintiff's hours.[49]

Defendant also made deductions from Plaintiff's pay, without Plaintiff's express consent.[50] On July 19, 2023, there was a payroll error that overpaid everyone in the Firm.[51] instead of seeking a deduction or reimbursement through proper means, Defendant withheld Plaintiff's paycheck for *three* pay periods (which were two weeks long) until Plaintiff "worked off" the error of the payroll company.[52] In other words, Plaintiff had to work 6 weeks without pay and was not given the option

---

[40] Ex. A, Interrogatory Response No.8.
[41] Ex. D, p. 21-22.
[42] Exhibit H - May 7, 2025, Deposition of Julie McLoughlin, p. 17.
[43] Ex. B, p. 123; *see,* Exhibit I.
[44] Ex. F, p. 17.
[45] Ex. B, p. 123; Ex. C, p. 45.
[46] Ex. F, p. 17.
[47] Ex. A, Response to Interrogatory No.9.
[48] Ex. B, pp. 100, 124.
[49] Ex. A, Request for Admission No.16, No. 17; Ex. C, p. 45.
[50] Ex. A, Request for Admission No.18.
[51] *See*, Exhibit J.
[52] Ex. B, pp.101-102.

to return money.[53] Ferguson experienced the same, Defendant withheld payment of her wages for one pay cycle.[54] Strangely, Defendant handled the error differently with everyone yet, Plaintiff was not given any other option to resolve the error.[55]

Defendant has no identifiable retention policy for keeping and maintaining documents related to an employee or independent contractor hours worked.[56] Defendant only keeps available tax documents to attest to an employee's payroll and timekeeping records.[57]

## IV. AUTHORITIES AND ARGUMENTS

### A. Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[58] A fact is material if it might affect the outcome of the lawsuit under the governing law and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party.[59] The nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.[60]

### B. Motion for Summary Judgment on Plaintiff's Claims

#### a. PLAINTIFF WAS MISCLASSIFIED AS AN INDEPENDENT CONTRACTOR

A worker is only an independent contractor, as distinguished from an "employee" under the FLSA, if the worker is, as a matter of economic reality, in business for themself.[61] A court must

---

[53] Ex. B, pp. 102-103.
[54] Ex. D, p. 25.
[55] Ex. B, p. 103; Ex. D, p. 25.
[56] Ex. C, pp. 74-75.
[57] *Id.*
[58] Fed. R. Civ. 56(a).
[59] *Mata v. Caring for You Home Health, Inc.,* 94 F. Supp. 3d 867, 870-71 (S.D. Tex. 2015).
[60] *Id.* at 871.
[61] 29 CFR §795.105(b).

consider, among other factors, the hiring party's right to control the manner and means by which the product is accomplished.[62]

The 5th Circuit applies the "economic realities/common law control test," a variation of the common law agency test, in determining whether a party is an employee or an independent contractor.[63] The economic-realities portion of the test asks whether punitive employees, "as a matter of economic reality, are dependent upon the business to which they render service."[64] The common law control portion of the test, which courts should emphasize over the economic realities portion, assesses "the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed.[65] An evaluation of economic reality depends on the totality of the circumstances.[66] To aid in the inquiry as to whether the worker qualifies as an employee, the 5th Circuit relies on the *Hopkins* test:

> (1) the degree of control exercised by the alleged employer (lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence.[67]); (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job (whether plaintiffs have "some unique skill set, or some ability to exercise significant initiative within the business.[68]); and (5) the permanency of the relationship((1) whether a plaintiff "worked exclusively" for defendant, (2) the total length of relationship between the plaintiffs and defendant, and (3) whether the work was on a "project-by-project" basis.).[69]

Martinez required she approve Plaintiff's work before it was sent or filed on behalf of the Firm. Martinez admitted to rejecting or revising Plaintiff's hours before approving her payments. Throughout Plaintiff's employment, Martinez reviewed and approved Plaintiff's work on a

---

[62] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992).
[63] *Diggs v. Harris Hosp. – Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988).
[64] *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013).
[65] *Mares v. March*, 777 F.2d 1066, 1067 (5th Cir. 1985).
[66] *Klick v. Cenikor Found.*, 94 F.4th 362, 369 (5th Cir. 2023).
[67] *Johnson v. Hous. KP, LLC*, 588 F. Supp. 3d 738, 744 (S.D. Tex. 2022).
[68] *Id.*
[69] *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).

micromanaging level. Martinez checked in with Plaintiff daily via email, text, Microsoft Teams, and/or Zoom, Plaintiff was not treated like she had her own business but was a Firm employee. Plaintiff had a Firm e-mail and a Firm-issued computer. Martinez required Plaintiff to attend CLE's courses as well as weekly staff meetings on Zoom alongside the other Firm staff, all of which were classified as employees. Plaintiff was required to pass a background check and clear a security clearance before joining the Firm. Plaintiff was employed by Defendant to provide legal services, Plaintiff held no paralegal or legal assistance certifications. Unlike a typical independent contractor, Plaintiff worked for Defendant for years, this was not a temporary client-business owner relationship. from April 2018 until she was terminated in January 2024 (approximately 68 months).

**b. DEFENDANT IMPROPERLY DEDUCTED WAGES FROM PLAINTIFF**

Any employer who violates §206 or §207 of the FLSA shall be liable to the employee affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional an equal amount as liquidated damages.[70]

Throughout Plaintiff's employment, she prepared an itemized billing timesheet for Martinez to review. Martinez contested the work performed by Plaintiff and made deductions to Plaintiff's pay. On a minimum of five different occasions, Plaintiff submitted timesheets showing she worked more than 40 hours in a week, and each time, Martinez would schedule a phone conversation to discuss the submitted timesheet. Martinez would reject and revise the hours submitted by Plaintiff before eventually paying her for 40 hours or less.

On July 19, 2023, there was a payroll error that resulted in duplicate payments to everyone in the firm. Defendant knowingly withheld Plaintiff's paycheck for three pay periods until Plaintiff

---

[70] 29 U.S.C §216(b).

"worked off" the error. Plaintiff was not given an option to repay the money or any other means of resolution.

### c. Defendant Failed to Pay Plaintiff her Overtime

No employer shall employ any of his employees who in any workweek … is employed in an enterprise engaged in commerce … for a workweek longer than forty hours unless such employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [she] is employed.[71] If an employer knows its employee worked overtime, it must pay overtime wages even if the employee does not claim overtime compensation.[72] Management cannot sit back and accept benefits without compensating for them.[73] An announcement by an employer that no overtime work will be permitted, or that overtime work will not be compensated unless authorized in advance, will not impair the employee's right to compensation for work he actually suffers or is permitted to perform.[74] A plaintiff need not prove each hour of overtime with unerring accuracy or certainty.[75] In the absence of rebuttal by defendants, plaintiffs' recollection and estimate of hours worked are presumed to be correct.[76]

It is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.[77] The employer bears the burden of exercising its control to ensure that overtime work is not performed if it is prohibited by the employer.[78] The plaintiff must show that the employer had actual or constructive knowledge that he was working

---

[71] 29 U.S.C 207(a)(1).
[72] *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 544-45 (S.D. Tex. 2011).
[73] *Id.* at 545.
[74] 29 CFR §778.316.
[75] *Diaz v. Castro*, 122 F. Supp. 3d 603, 611 (S. D. Tex. 2014).
[76] *Id.*
[77] *Chevron Phillips Chem. Co., L.P.,* at 545.
[78] *Id.*

overtime.[79] Constructive knowledge exists if an employer "exercising reasonable diligence" would become aware that an employee is working overtime.[80]

Defendants purpose is to provide legal representation for those involved in personal injury conflicts. Defendant's employees are told not to work over 40 hours per week unless approved by the Defendant in advance. Martinez made clear that the Firm would not be paying anyone overtime. Martinez keeps available tax documents only to attest to an employee's payroll and timekeeping records. Plaintiff kept track of her hours and submitted them to Defendant for review and approval. After the legal assistant McLaughlin separated from the Firm and the Defendants' dependence on Plaintiff and repeated failed attempts on finding and retaining proper help. On a minimum of five different occasions, Plaintiff submitted timesheets showing she worked more than 40 hours in a week, and each time, Martinez would schedule a phone conversation to discuss the submitted timesheet. Martinez rejected and revised the hours submitted by Plaintiff before paying her. Plaintiff's work was often contested and deductions were made to her pay accordingly. Defendant made deductions from Plaintiff's pay. When other employees of the Firm worked more than 40 hours a week, Martinez would ask them to come in later the next day instead of rendering proper wages.

### d. The Firm Does Not Collect, Keep, or Maintain Statutorily Required Records

Every employer shall make, keep, and preserve such records of the persons employed by [her] and of the wages, hours, and other conditions and practices of employment…and shall preserve such records for such periods of time.[81] An employer may not escape the record-keeping provisions by delegating that duty to their employees.[82]

---

[79] *Id.*
[80] *Id.*
[81] 29 U.S.C 211(c).
[82] *Id.*

Martinez was the only individual involved in the preparation, review, and approval of payroll and timekeeping records. Defendant left Plaintiff to track her own hours, then made her revise them so she could justify paying Plaintiff less. This is a record-keeping violation on its face.

#### e. Defendant Willfully Violated the FLSA

A cause of action based on a willful violation of the FLSA can be initiated within three years after the cause of action arises.[83] An employer willfully violates the FLSA only if it "either knew or showed reckless disregard for whether its conduct was prohibited by law."[84] The presumption of willfulness remains unless there is clear and strong evidence of good faith.[85] Knowledge is generally imputed to the offending employer.[86]

Martinez is the one (and only) principal lawyer of the Firm and has under her control several staff who provide secretarial and legal support. Martinez referenced no relevant law and consulted no experts in the matter, made employment decisions for the Firm using only her general understanding of labor law. Plaintiff explicitly asked Martinez for clarification on the differences between an independent contractor and employee. Martinez never explained the difference or the ultimate effects on Plaintiff. Plaintiff kept track of her hours and submitted them to Defendant for review and approval. Plaintiff prepared and submitted an itemized billing timesheet each week work was completed. On at least five different occasions, Plaintiff submitted timesheets reflecting more than 40 hours worked in a week, and each time, Martinez contested her timesheet.

#### f. Plaintiff is Entitled to Liquidated Damages

Any employer who violates the provisions of section 206 or section 207 of 29 U.S.C. shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or

[83] 29 U.S. Code §255(a).
[84] *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994).
[85] *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1353 (5th Cir. 1980).
[86] *Id.*

their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.[87]

**A. <u>Motion for Summary Judgment on Defendant's Affirmative Defenses</u>**

**a. DEFENSE RELATING TO THE STATUTE OF LIMITATIONS**

Actions under the FLSA may be commenced within two years after the cause of action accrued…except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.[88]

Plaintiff filed her original complaint on June 11, 2024.[89] Plaintiff began reporting overtime around April 2022. Defendant presented evidence of Plaintiff reporting over time well into 2023, as recent as July 1, 2023. Further, Martinez began withholding payment due to an "overpayment issue" on July 19, 2023. Additionally, Plaintiff alleges she was misclassified as an independent contractor until January 2024. Plaintiff's complaint was filed no later than two years, and well within the statute of limitations under Chapter 29. Should there be a finding of willfulness in Defendant's actions alleged within Plaintiff's complaint, the statute of limitations on these claims is extended to three years. [90] This defense does not apply under these facts and as such, Plaintiff moves for summary judgment on this defense.

**b. DEFENSE REGARDING DEFENDANT'S ACTING IN GOOD FAITH**

An employer has a substantial burden of proving to the satisfaction of the trial court that its acts giving rise to the suit are both in good faith and reasonable.[91] Good faith requires a duty to

[87] 29 U.S.C 216(b).
[88] 29 U.S.C §255(a).
[89] *See generally,* Doc. 1.
[90] 29 USC §255(a).
[91] *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990).

investigate potential liability under the FLSA, and ignorance cannot be the basis of a reasonable belief.[92] Good faith requires some duty to investigate potential liability under the FLSA."[93]

Martinez used her "general understanding" of the difference between an independent contractor and an employee. Defendant has not published a handbook. Further, Martinez cannot recall having ever taken any classes, attending any CLE, or completing any self-study regarding the classification of employees under the Fair Labor Standards Act. Martinez cannot recall reviewing and website or regulations, guidelines by the Department of Labor regarding the classification of employees versus independent contractors. Martinez never accepted or worked on anything regarding the Fair Labor Standards Act.

For Martinez's failure to seek knowledge, as a practicing attorney, about the legitimacy of the actions taken in connection with Plaintiff's compensation under any of the guidance from the Department of Labor, negates any claim of those actions being taken in good faith. For these reasons, the affirmative defense of Defendants' good faith necessary to bar Plaintiff's claims under 29 U.S.C. §259 is invalid. Plaintiff moves for summary judgment on this defense.

#### c. Defense Regarding Defendant Not Having Knowledge or Approving of Plaintiff's Hours

Defendant denies Plaintiff's ability to recover the amounts owed for the overtime hours Plaintiff worked because they were not known by Martinez and were not approved.[94] An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation.[95] An employee's proof of employment during the time for which [she] seeks overtime compensation requires a showing that the employer had either actual or constructive knowledge of the

[92] *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979).
[93] *Id.* at 468-469.
[94] *See,* Doc. 6, ¶ 1-9.
[95] *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995).

overtime.[96] Constructive knowledge exists if an employer would become aware that an employee is working overtime by exercising reasonable diligence.[97] Work not requested but suffered or permitted is work time.[98]

Plaintiff submitted weekly timesheets to Martinez, each summarizing the hours worked by the Plaintiff in excess of 40 hours. In response to Plaintiff's timesheets, Martinez testified that she would regularly contest the hours worked by the Plaintiff. Defendant's claim of lack of knowledge is directly in opposition to her sworn testimony and is therefore not a viable affirmative defense to be considered by this court.

#### d. Defenses Regarding the Portal-to-Portal Act & Motor Carrier Act Exemption

The Portal-to-Portal Act limits an employer's liability under the FLSA for any failure(s) to pay an employee minimum wages or overtime for any activity of any employee engaged in before May 14, 1947.[99] The Motor Carrier Act Exemption found under section 13(b)(1) of the FLSA applies to employees who are (1) employed by a motor carrier or motor private carrier; (2) drivers, drivers helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce; and (3) not covered by the small vehicle exception.[100]

There is no evidence that these acts apply to Plaintiff, Defendant, or the facts of this case. For that reason, we move for summary judgment on these defenses.

---

[96] *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995).
[97] *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973).
[98] 29 CFR 785.11.
[99] *Portal-to-Portal Act of 1942*, 29 U.S.C. § 252(a).
[100] *Motor Carrier Act Exemption*, 29 U.S.C. 13(b)(1).

### B. Conclusion

For the foregoing reasons, Christie Punger requests that this Court grant Plaintiff's Motion for Summary Judgment. Plaintiff also requests the Court award them all recoverable damages and fees resulting from these violations, attorney's fees and court costs, and any other relief to which she justly is entitled.

Respectfully submitted,
Space City Law Firm

/s/ Jasmine Williams

Bridget Davidson
State Bar No.: 24096858
SDTX No.: 3005005
Jasmine Williams
State Bar No.: 24146239
SDTX No.: 3918801
Space City Law Firm
440 Louisiana Street, Suite 1110
Houston, Texas 77002
*bdavidson@spacecitylaw.com*
*jwilliams@spacecitylaw.com*
Tel: 713.568.5305
Fax: 713.583.1107

***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of July 2025, I served a true and correct copy of this document upon all counsel of record via the Court's CM/ECF system, which sends an automatic notice to all parties of record.

**/s/ Jasmine Williams**
Jasmine Williams